## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DUSTIN DALEN, on behalf of himself and all others similarly situated, | No. 1:20-cv-4393 |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| SUBARU OF AMERICA, INC.; and DOES 1 through 20, inclusive, | **CLASS ACTION** |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff DUSTIN DALEN ("Plaintiff") individually and on behalf of all others similarly situated ( "Class Members" as defined below), by and through his attorneys, alleges as follows against Defendant Subaru of America, Inc. ("Subaru" or "Defendant").

## INTRODUCTION

1.    Plaintiff brings this class action against Subaru for selling vehicles with defective electrical systems that cause unexpected battery failure ("Defect").  The vehicles become inoperable leaving owners stranded and facing the unexpected expenses of roadside assistance, jump-starts, and repeated battery replacements. To the surprise of many consumers, their vehicle is far from being as reliable as advertised.

2.    Vehicles affected include 2016-2019 Subaru Outbacks and 2019-2020 Subaru Ascents (the "Class Vehicles"). Defendant is more than aware of the Defect plaguing Class Vehicles.  Yet, it has failed to provide a permanent solution to this

reoccurring issue. That Defendant has long known about the Defect is clear based on a related service bulletin in 2017 specifically describing the Defect, and by the large numbers of consumer complaints, including those made to Defendant's authorized dealers.

3.     Defendant attempts to remedy the Defect by simply replacing the battery. But Defendant does so with batteries that have the same Defect, and thus, fails to fix the problem. This makes it substantially certain that the Defect will occur again, and many Class Members have in fact had their batteries replaced multiple times.

4.     Defendant failed to disclose this Defect to Plaintiff and Class Members and has deprived them of the benefit of their bargain in purchasing the Class Vehicles. Plaintiff accordingly seeks relief both for himself and for other owners or lessees of these Class Vehicles.

## JURISDICTION AND VENUE

5.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.

6.     The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7.     Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391 because Subaru is headquartered and regularly transacts business in this district, is subject to personal jurisdiction in this district and, therefore, is deemed to be a citizen of this district. Subaru also advertises in this district and has received substantial revenue and profits from its sales and/or leasing of Class

Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims herein occurred, in part, within this district.

9.      This Court has personal jurisdiction over Subaru because it is headquartered in this judicial district, has conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within New Jersey and throughout the United States.

## PARTIES

### Plaintiff Dustin Dalen

10.      Plaintiff Dustin Dalen is a citizen and resident of Salem, Oregon.

11.      In March 2017, Mr. Dalen purchased a new 2017 Subaru Outback from Salem Capital Subaru (the "Dealership"), which is an authorized Subaru dealership located in Salem, Oregon.

12.      Mr. Dalen purchased his vehicle for personal, family, and household use.

13.      The VIN number of the vehicle is 4S4BSENCXH3328034.

14.      Prior to purchase, Mr. Dalen encountered Subaru representations concerning the reliability of its vehicles in advertisements and sales materials, including a Subaru advertisement that stated most Subaru Outbacks were still operating after 10 years of use.

15.      Mr. Dalen uses (and at all times has used) his Class Vehicle in the normal and expected manner.

16.      Prior to purchase, Mr. Dalen read or was otherwise aware that his vehicle came with the Subaru New Vehicle Limited Warranty. Indeed, Mr. Dalen purchased an extended 5-year/75,000-mile warranty.

17.      The battery in Mr. Dalen's Subaru has failed twice since he first purchased the vehicle in 2017.

18.      The battery first failed on April 3, 2018. Mr. Dalen's wife had taken

the vehicle to the park with their two children. Though the vehicle only had about 12,000 miles, the battery prematurely failed. Mr. Dalen was forced to drive to the park and jump-start the vehicle.

19.     Mr. Dalen then took the vehicle to the Dealership for inspection, but the service technician was unable to diagnose the problem.

20.     From then on, Mr. Dalen was required to regularly charge the battery at home to keep it from failing again.

21.     However, the battery in Mr. Dalen's Subaru did in fact fail a second time.  On this occasion, he drove to Seattle, Washington for a work trip.  On the night before he was scheduled to return home, the battery failed, and he was forced to take an Uber at 10:00 p.m. to the supermarket to purchase charger and extension cables.  He would need these to jump-start the car the next morning.

22.     The experience caused Mr. Dalen stress, and expenses related to the Defect.

23.     On February 15, 2020, during a regular oil change at the Dealership, the battery was replaced after it was determined that it had low voltage. It was covered under warranty.  The mileage on the vehicle was 35,748.

24.     Based on the nature of the Defect, Mr. Dalen is likely to suffer more battery failures.

25.     Had Subaru disclosed the Defect, Mr. Dalen would not have purchased his Class Vehicle or would have paid significantly less for it.

26.     Mr. Dalen's vehicle has also suffered diminution in value due to the Defect and the resulting loss in his Subaru vehicle's resale value.

### Defendant

27.     Subaru is a New Jersey corporation with its principal place of business in Camden, New Jersey.

28.     Subaru is engaged in the business of designing, manufacturing,

warranting, marketing, advertising and selling vehicles, including the Class Vehicles, under the "Subaru" brand name through a network of more than 600 dealerships in the United States.

29.     The design, manufacture, distribution, service, repair, modification, installation and decisions regarding the batteries, electrical systems, and other components within the Class Vehicles were controlled exclusively by Subaru and its agents and affiliates.

## FACTUAL ALLEGATIONS

### A.     The Battery Defect

30.     People depend on their automobiles to provide reliable and safe transportation. The battery is an essential safety component of any vehicle, as it powers the vehicle and allows the engine to start and the car to work. Generally, sport utility vehicle batteries have a useful life of four to six years.

31.     The Class Vehicles suffer from a Defect that prematurely renders them inoperable. The Defect causes unexpected and reoccurring battery drain resulting in premature battery failure under ordinary use.

32.     When this Battery System Defect manifests and the battery fails, the engine in the Class Vehicle will not start, and the vehicle is rendered completely inoperable. Drivers are stranded and must seek roadside assistance or alternative means of transportation. Given the serious and varied dangers from being left stranded, the Defect presents a clear safety hazard.

### B.     Subaru's Marketing and Disclosures

33.     Subaru markets its vehicles as safe and reliable, and it could have used its marketing to disclose the defect in addition to its dealers and sellers. For example, Subaru advertises its Outback models as having "go-everywhere capability."

34.     Subaru also represents that Class Vehicles are "built to take you to the

place you've never been,[1] "mak[ing] more destinations possible," "the most adventurous, most reliable, and safest," and "built to minimize limits and maximize versatility, durability and all-around safety. This means you can explore that new destination you have in mind, take the scenic route, and go without hesitation."

35. "When you're ready for life's next big adventure, the all-new 2019 Ascent is ready to take you to new heights,"[2]

36. Subaru boasts, "And you'll always drive with confidence, thanks to legendary Subaru quality, durability and reliability."[3] While Subaru had the opportunity to simultaneously disclose the Defect with these representations, it chose instead to actively conceal this material information from Plaintiff and similarly situated consumers.

37. Despite Subaru's representations of reliability and safety, the Defect renders the vehicles prone to premature battery—and ultimately—failure that causes the Class Vehicles to lose battery power, which strands drivers in random and sometimes dangerous locations.

38. Because of the recurring failures from the Defect, many Class Members, including Plaintiff, have had to purchase equipment to jump or charge their batteries. They purchased this equipment out of necessity to avoid being without use of their vehicles or finding themselves unexpectedly stranded. The Defect, however, cannot be remedied simply by jumping or re-charging the battery.

39. Vehicle batteries are not designed to be continually drained down to low volumes. Their purpose is to provide a quick surge of electricity to start the engine. After the engine starts, the alternator provides the power the vehicle needs. When a vehicle's battery is drained to a low percentage of its total charge, its

---

[1] https://www.subaru.com/vehicles/outback/previous-year/index.html (Outback 2019 Model).
[2] https://www.subaru.com/guides/outback/my19/?utm_source=com&utm_medium=cta&utm_term=OBK&utm_campaign=VSP&utm_content=MY19 (Outback 2019 model).
[3] https://www.subaru.com/guides/ascent/my19/?utm_source=com&utm_medium=cta&utm_term=ASC&utm_campaign=VSP&utm_content=MY19 (2019 Ascent model).

lifespan is shortened, until the battery loses all power. The Defect therefore results in the need to replace the battery in Class Vehicles far more often than is typical. Until the Defect is fixed by Subaru, replacing batteries will continue to be an ongoing expense and inconvenience for owners and lessees—especially after their warranty period has expired.

### C. Subaru Has Failed to Fix the Problem

40.     When owners and lessees take their Class Vehicles into Subaru dealerships for service, the dealerships at most replace the batteries. But because Subaru replaces the batteries with the same batteries, the battery-drain problem recurs. Replacing the battery is thus a temporary fix only.  The new battery is prone to failure from the same Defect. Thus, Subaru does not fix the Defect.

41.     The Defect arises from Subaru's decision to install batteries with insufficient capacity to power the Class Vehicles' electrical components when the vehicle is turned off. Absent a repair to the vehicle that reduces the demand on the battery, drivers whose batteries are replaced with the same battery are substantially certain to experience the Defect again.

42.     The Defect impacts the core functionality of the Class Vehicles—when it manifests, it prevents consumers from operating their automobiles.

### D. Subaru Is Aware of the Defect

43.     Upon information and belief, Plaintiff is informed and believes that Defendant has been aware of the Defect since at least 2017.  Yet, Defendant failed and refused to disclose the existence, nature, or scope of the Defect to Plaintiff, to the members of the proposed class, or to any other purchaser of an affected Class Vehicle throughout the United States.  Plaintiff and the proposed class have been put at risk of a looming safety hazard without knowing it and have been forced to bear the cost of repairs that become necessary when the Defect manifests.

44.     It is evidenced based on complaints to the National Highway Traffic Safety Administration ("NHTSA") and on the internet, that purchasers and lessees of the Class Vehicles have experienced dead batteries as a result of the Defect. Those complaints reveal that the Defect is widespread, dangerous and that it manifests without warning.

45.     Upon information and belief, Defendant monitors both NHTSA's website and the internet for complaints made about Subaru vehicles. Upon information and belief, Defendant is aware of these complaints and of the problems with the electronic systems and/or batteries of Class Vehicles, the costs associated with the necessary repairs, and how the Defect poses a safety issue for consumers. The following are a few examples of the numerous consumer complaints available on the NHTSA[4] website and online[5]:

National Highway Traffic Safety Administration Complaints

- **Subaru Outback 2019**
  **Date:** April 3, 2020
  **Components:** ELECTRICAL SYSTEM
  **NHTSA ID Number:** 11320091
  **Incident Date**: April 2, 2020
  **Consumer Location**: SAMMAMISH, WA
  **Vehicle Identification Number**: 4S4BSENC1K3****
  **Summary of Complaint**
  BRAND NEW 2019 SUBARU OUTBACK EXPERIENCES REPEATED PARASITIC BATTERY DRAIN LEAVING MY STRANDED WHILE TRAVELING. SUBARU ROADSIDE ASSISTANCE STATES THAT THERE IS MOST LIKELY AN ELECTRICAL ISSUE WITH THE REAR HATCH BUT SUBARU REFUSES TO ACKNOWLEDGE THE ISSUE. I HAVE BEEN STRANDED 5 TIMES INCLUDING ONCE IN A REMOTE PART OF CANADA.

/ / /

---

[4] https://www.nhtsa.gov/vehicle (last visited April 16, 2020).
[5] https://www.cargurus.com/Cars/Discussion-t58701_ds833514 (last visited April 16, 2020) (2016 Subaru Outback - dead battery forum); https://community.cartalk.com/t/2017-subaru-outback-batteries-died-twice/120574 (last visited April 16, 2020) (2017 Subaru Outback -battery died twice forum); https://www.ascentforums.com/threads/battery-concern.4791/ (last visit April 16, 2020) (Subaru Ascent – battery concern forum).

- **Subaru Outback 2019**
  **Date:** February 27, 2020
  **Components:** ELECTRICAL SYSTEM
  **NHTSA ID Number:** 11311852
  **Incident Date**: April 10, 2019
  **Consumer Location**: ELGIN, TX
  **Vehicle Identification Number**: 4S4BSETC8K3****
  **Summary of Complaint**
  BOUGHT NEW 11/2019.BATTERY WILL NOT STAY CHARGED...NOW ON 3RD BATTERY INSTALLED BY DEALER.TODAY,(02/27/2020) THIS BATTERY IS NOW DEAD.MY WIFE IS DISABLED AND HAS A 95 YEAR OLD MOTHER LIVING 300 MILES FROM MY HOME THAT SHE VISITS ON A REGULAR BASIS...I DO NOT TRUST THIS VEHICLE NOT TO LEAVE HER STRANDED! SUBARU HAS A PROBLEM ACCORDING TO MY RESEARCH AND THIS COULD BE A SAFETY ISSUE IF IT LEAVES YOU STRANDED.

- **Subaru Outback 2018**
  **Date:** December 15, 2019
  **Components:** ELECTRICAL SYSTEM
  **NHTSA ID Number:** 11289138
  **Incident Date**: December 15, 2019
  **Consumer Location**: THORNTON, CO
  **Vehicle Identification Number**: 4S4BSENC3J3****
  **Summary of Complaint**
  I HAVE REPLACED THE BATTERY TWICE AND THE BATTERY IS STILL DEAD IF I DON'T DRIVE THE VEHICLE FOR MORE THAN 3 DAYS. OBVIOUSLY THERE IS A PARASITIC DRAIN. I DON'T HAVE AN OPTIONS OR ACCESSORIES INSTALLED THAT DID COME WITH THE VEHICLE WHEN PURCHASED.

- **Subaru Outback 2017**
  **Date:** March 23, 2020
  **Components:** ELECTRICAL SYSTEM
  **NHTSA ID Number:** 11319014
  **Incident Date**: March 21, 2020
  **Consumer Location**: DENVER, CO
  **Vehicle Identification Number**: 4S4BSENC6H3****
  **Summary of Complaint**
  MY 2017 SUBARU OUTBACK HAS PARASITIC BATTERY DRAIN THAT KILLS THE BATTERY. THE CAR WON'T START MAKING THE VEHICLE UNRELIABLE. THIS IS A ROUTINE ISSUE WITH SUBARU AND NEEDS TO BE ADDRESSED.

- **Subaru Outback 2017**
  **Date:** September 11, 2019

**Components:** ELECTRICAL SYSTEM
**NHTSA ID Number:** 11254696
**Incident Date**: September 10, 2019
**Consumer Location**: TIGARD, OR
**Vehicle Identification Number**: 4S4BSENC6H3****
**Summary of Complaint**
BATTERY DEAD SEVERAL TIMES. HAVE HAD TO HAVE IT JUMPED
SIX TIMES. BATTERY REPLACED BY DEALER ONCE. I NOTE THAT
MANY SUBARU OWNERS HAVE SIMILAR PROBLEM.

- **Subaru Outback 2016**
  **Date:** October 20, 2019
  **Components:** ELECTRICAL SYSTEM
  **NHTSA ID Number:** 11269609
  **Incident Date**: October 19, 2019
  **Consumer Location**: SANTA CRUZ, CA
  **Vehicle Identification Number**: 4S4BSAJCXG3****
  **Summary of Complaint**
  REPEATED AND UNPREDICTABLE BATTERY FAILURE WITH NO
  APPARENT CAUSE, I.E. DOME LIGHTS OR OTHER ACCESSORIES
  NOT POWERED "ON"., DOORS OR REAR CARGO HATCH NOT OPEN.
  DEALER ANALYSIS OF ELECTRICAL SYSTEM FOUND NO ISSUES
  HOWEVER REPLACED BATTERY.

  LAST OCCURRENCE 10/19/2019 IN THE HOME GARAGE.FOR
  RELIABILITY IT WAS NECESSARY TO PURCHASE A PORTABLE
  BOOSTER CHARGER COSTING $100.00.

  THERE HAS BEEN 8 SUCH OCCURRENCES SINCE THE PURCHASE
  (NEW) IN 2016.

  PLEASE ADVISE.

- **Subaru Outback 2016**
  **Date:** August 5, 2019
  **Components:** ELECTRICAL SYSTEM
  **NHTSA ID Number:** 11241874
  **Incident Date**: August 5, 2019
  **Consumer Location**: PITTSBURG, CA
  **Vehicle Identification Number**: 4S4BSACC2G3****
  **Summary of Complaint**
  DEAD BATTERY AT 38,000 MILES. NO INDICATOR LIGHTS OF ANY
  EXISTING PROBLEM. LEFT STRANDED AND OUT $150 FOR NEW
  BATTERY. SAW MANY FORUMS RELATED TO THIS SAME PROBLEM.
  SUBARU OWES IT TO THE CAR OWNERS TO ADMIT AND FIX AND NO
  CHARGE THIS PROBLEM. DROVE AT LUNCH TIME AND WHEN I WAS

RETURNING BACK TO WORK IT WOULD NOT START. CAR WAS PARKED IN PARKING LOT. NOTHING LEFT ON. WHEN TURNING IGNITION ON THE DASHBOARD LIGHTS ALL CAME ON AS WELL AS RADIO AND WINDOWS WORKED UP AND DOWN BUT NO START. HAD CO-WORKER COME AND JUMP START AND IT STARTED RIGHT AWAY.

- **Subaru Ascent 2020**
**Date:** February 10, 2020
**Components:** ELECTRICAL SYSTEM
**NHTSA ID Number:** 11308370
**Incident Date**: February 8, 2020
**Consumer Location**: BILLINGS, MT
**Vehicle Identification Number**: 4S4WMARD3L3****
**Summary of Complaint**
PURCHASED NEW 30 DEC 2019. OWNED 5+ WEEKS NO ISSUES - DROVE 07 FEB 2020 NO DRIVE-ABILITY ISSUES OR WARNING LIGHTS, PARKED AS USUAL IN HEATED GARAGE AT HOME. WENT TO START 08 FEB 2020, WHEN START BUTTON PUSHED, NO STARTING BUT ALL THE VEHICLE LIGHTS (INTERIOR AND EXTERIOR) FLASHED BRIGHTLY AND RAPIDLY (3-4 TIMES A SECOND) FOR ABOUT 30 SECONDS THEN ALL ELECTRICAL INOPERATIVE (NO LIGHTS ANYWHERE, NO HORN, NO STARLINK ACTIVATION... SUBARU ROAD ASSISTANCE CALLED & THEY SUMMONED ANDERSON TOWING (A LOCAL TOWING COMPANY); WHEN JUMPER CABLE ATTACHED TO BATTERY IMMEDIATELY ALL LIGHTS CAME ON BRIGHTLY AND A LOUD ELECTRICAL ARCING NOISE OCCURRED AND IT STARTED. IF THIS TOTAL ELECTRICAL FAILURE HAD HAPPENED DURING VEHICLE OPERATION IT COULD HAVE RESULT IN CATASTROPHIC INJURY AND DAMAGE. TOOK VEHICLE TO LOCAL SUBARU DEALERSHIP 10 FEB 2020 WHO CHECKED BATTERY AND COMPUTER TROUBLE CODES AND FOUND NOTHING UNUSUAL. HOW IS THAT POSSIBLE? IT WAS A TOTAL ELECTRICAL FAILURE - JUMPING THE VEHICLE REMINDED ME OF PARAMEDICS SUCCESSFULLY APPLYING AED PADDLES TO DEFIBRILLATE A STOPPED HEART. THIS SITUATION IS SIMILAR TO OTHER COMPLAINTS NOTED FOR THIS VEHICLE. THIS IS A POTENTIALLY VERY DANGEROUS ISSUE AND NEEDS AN IMMEDIATE REMEDY.

- **Subaru Ascent 2020**
**Date:** October 20, 2019
**Components:** ELECTRICAL SYSTEM
**NHTSA ID Number:** 11269800
**Incident Date**: October 19, 2019
**Consumer Location**: GRAND ISLAND, NY

**Vehicle Identification Number**: 4S4WMARD2L3\*\*\*\*
**Summary of Complaint**
IN AM TAILGATE FOUND OPENED (BY ITSELF), BATTERY DEAD , 3 JUMP STARTS OVER 24HRS BATTERY STILL NOT RECHARGING AFTER 6 HRS CONTIN. OPERATION, NOW CARPLAY AND BLUTOOTH MICROPHONE NOT WORKING, MANY COMPLAINTS ONLINE RE THIS, NO MANUAL TAILGATE OPENING, AND NO WORKING BATTERY SHUT OFF OF TAILGATE OR ITS LIGHT IN SOFTWARE

- **Subaru Ascent 2019**
  **Date:** February 17, 2020
  **Components:** ELECTRICAL SYSTEM
  **NHTSA ID Number:** 11309670
  **Incident Date**: December 31, 2019
  **Consumer Location**: ARNOLD, MD
  **Vehicle Identification Number**: 4S4WMARD6K3\*\*\*\*
  **Summary of Complaint**
  AFTER LEAVING THE REAR HATCH OPEN FOR AN EXTENDED TIME WHILE LOADING THE CAR FOR A TRIP TO FLORIDA, IT FAILED TO START. IT ALSO WAS NOT ABLE TO BE JUMP START IT WITH ANOTHER CAR BATTERY. IT WAS FINALLY TOWED TO THE DEALER ON 12/31/19 & THEY CHARGED THE BATTERY & TESTED & REPROGRAMMED IT.SINCE I WAS GOING AWAY FROM HOME FOR AN EXTENDED PERIOD, I DIDN'T WANT TO TAKE A CHANCE THAT THE DISCHARGED BATTERY WOULD CAUSE FURTHER PROBLEMS, SO I PURCHASED A NEW BATTERY & HAD IT INSTALLED. AS I UNDERSTAND FROM THE SERVICE TECHNICIAN, A SENSOR ON THE TAILGATE DID NOT SHUT OFF THE CARGO LIGHT WHEN IT WAS LEFT OPEN FOR THE EXTENDED PERIOD, WHICH DISCHARGED THE BATTERY TO ALMOST NO ENERGY REMAINING. THIS EXTREMELY LOW ENERGY CAUSED THE BATTERY NOT TO BE ABLE TO BE JUMPED & FORCED IT TO BE TAKEN TO THE DEALER TO BE CHARGED. I UNDERSTAND THAT ALMOST COMPLETE DISCHARGING OF A BATTERY SIGNIFICANTLY SHORTENS ITS LIFE & RELIABILITY. I BELIEVE THAT THIS MODEL SUBARU HAS A DESIGNED DEFECT IN THE ELECTRICAL SYSTEM THAT CAUSES THE BATTERY TO BE ALMOST COMPLETELY DISCHARGED BY HAVING THE TAILGATE OPEN FOR THE TIME IT TAKES TO PACK THE CAR. THIS BELIEF IS REINFORCED BY CHECKING THE INTERNET & LEARNING THAT OTHER PEOPLE HAVE HAD SIMILAR EXPERIENCES & HAVE COMPLAINED ABOUT IT TO THE CAR MANUFACTURER. THE CAR MANUFACTURER NEEDS TO BE FORCED TO INSTITUTE A RECALL & PROVIDE A SOFTWARE "PATCH" & WHATEVER ELSE NEEDS TO BE MODIFIED OR CHANGED TO PREVENT THE BATTERY FROM DISCHARGING IN THE FUTURE. IF PART OF THE ORIGINAL PROBLEM WAS THAT THE OEM BATTERY WAS INAPPROPRIATELY

SIZED, THEN THEY SHOULD ALSO REIMBURSE ME FOR THE NEW
BATTERY THAT WAS PURCHASED.

- **Subaru Ascent 2019**
  **Date:** February 2, 2020
  **Components:** ELECTRICAL SYSTEM
  **NHTSA ID Number:** 11306550
  **Incident Date**: February 2, 2020
  **Consumer Location**: DEWITT, MI
  **Vehicle Identification Number**: 4S4WMAPD0K3****
  **Summary of Complaint**
  MY 2019 ASCENT WAS PARKED IN GARAGE OVERNIGHT. WENT OUT
  TO CAR AND FOUND REAR TAILGATE WOULD NOT OPEN AND CAR
  WOULD NOT START. BATTERY WAS DEAD. JUMPSTARTED CAR AND
  DROVE IT TO THE STORE. WHEN I PARKED THE CAR IT WENT DEAD,
  CAR WOULD NOT RESTART, AND WOULD NOT LOCK, TAILGATE
  WOULD NOT OPEN. HAD TO GET ROADSIDE SERVICE TO COME OUT
  AND START CAR. TOOK CAR TO DEALER AND THEY SAID THEY
  COULD NOT FIND ANYTHING WRONG BUT DID REPLACE THE
  BATTERY. SEVERAL WEEKS LATER WHILE CAR WAS PARKED AND
  LOCKED IN A STORE PARKING LOT I CAME OUT AND FOUND THE
  REAR TAILGATE OPEN. NO ONE HAD PUSHED THE REMOTE TO OPEN
  THE TAILGATE? TODAY I FOUND THE CAR PARKED IN THE GARAGE
  AND THE TAILGATE WOULD NOT OPEN, THE CAR WOULD NOT
  START, AND THE BATTERY WAS DEAD AGAIN. I COULD FIND NO
  REASON FOR THE BATTERY TO BE DEAD AGAIN. THE CAR HAD
  BEEN DRIVEN NORMALLY AROUND TOWN FOR THE LAST FEW
  DAYS. IT WAS PARKED IN THE GARAGE. ALL THE DOORS WERE
  SHUT AND NO LIGHTS HAD BEEN LEFT ON. THE CAR WAS
  PURCHASED IN JUNE 2019 AND HAS LESS THAN 6000 MILES ON IT
  PLUS THIS IS A NEW BATTERY. I AM CONCERNED ABOUT DRIVING
  THE CAR AND BEING LEFT ON THE ROAD BY A DEAD BATTERY OR
  COMING OUT AND FINDING THE REAR TAILGATE OPEN IN A
  PARKING LOT.

46.     Confirming its knowledge of the Defect, Subaru issued a Technical

Service Bulletin ("TSB") dated June 15, 2017 and revised on October 31, 2017.[6]

his TSB involved a reprogramming to attempt to address customer concerns that

included "[p]otential battery discharge (dead battery) after repeated periods of

short-trip driving." Hence, prior to June 15, 2017, Subaru was aware of and made

an unsuccessful attempt to fix the Defect in the Class Vehicles being produced at

---

[6] Available at https://static.nhtsa.gov/odi/tsbs/2017/MC-10131689-9999.pdf (last visited April 16, 2020).

that time.

47.    Defendant was more than aware of the Defect, and as several of the complaints above demonstrate, consumers often made their concerns known to Subaru, either directly or through its authorized dealers. Yet, Defendant failed to disclose the Defect to Plaintiff and Class Members. Defendant could have provided Plaintiff and Class Members with adequate and satisfactory notice of the Defect, but it did not. Instead, Defendant continued to sell and lease Class Vehicles, advertising them as reliable.

**E.    Subaru Knowingly Manufactures Class Vehicles with Defective Battery Systems**

48.    The Battery System Defect first manifested in the 2016 Subaru Outback. Despite receiving complaints from 2016 Outback drivers, Subaru continued to design, manufacture, and sell four additional model years of Outbacks with the same Defect and without informing prospective buyers about the Defect.

49.    Subaru introduced the Ascent, a larger SUV, to its vehicle lineup for the 2019 model year. The 2019 and 2020 Subaru Ascents suffer from the Defect.

50.    Despite receiving complaints about the Defect pertaining to 2016, 2017, and 2018 Outbacks, Subaru did not address the Defect in its 2019 Outback.

51.    After three years of mounting complaints about the Defect in Outbacks, Subaru knew about the Defect before it launched the Ascent, which was new to Subaru's lineup for the 2019 model year.

52.    An internal report dated April 26, 2019, from Subaru's Quality Improvement Committee noted that Subaru was already concerned with battery failure problems in the 2020 Outback, which was set to enter production in the summer.[7]

---

[7] Hans Greimel, *Behind the scenes, Subaru races to boost quality; Problems Blamed on Workers, Suppliers, Designers*, 93 AUTOMOTIVE NEWS 1 (June 24, 2019), https://www.autonews.com/sales/behind-scenes-subaru-races-boost-quality (explaining a Subaru document from April 2019 noted that there were problem in Outbacks with "battery failure").

53.     Despite its long-running knowledge of the Battery System Defect, Subaru still does not inform prospective buyers about the Defect. Nor has Subaru developed an effective fix for the sudden failures it causes.

54.     As a consequence of Subaru's actions and inaction, Class Vehicle owners have been deprived of the benefit of their bargain, lost use of their Class Vehicles for extended periods of time, been exposed to dangerous conditions from being stranded, and incurred lost time and out-of-pocket costs—including from payments for (1) alternative means of transportation such as rideshares or rental cars, (2) roadside assistance to tow or jump-start their cars, and (3) equipment to charge, attempt to preserve, or jump-start their vehicle batteries. Class Vehicles also have suffered a diminution in value due to the Defect.

55.     Had Plaintiff and Class Members known about the Defect, they would not have purchased or leased their Class Vehicles or would have paid significantly less in doing so.

## CLASS ACTION ALLEGATIONS

56.     This action is brought and may be maintained as a class action, pursuant to Rules 23(a), (b)(2), (b)(3) and/or (c)(4) of the Federal Rules of Civil Procedure.

57.     The Class is defined as follows:

Nationwide Class
All persons in the United States who bought or leased, other than for resale, a Class Vehicle.

58.      In addition, the state subclass is defined as follows:

Oregon Subclass
All persons in the state of Oregon who bought or leased, other than for resale, a Class Vehicle.

59.     Excluded from the Class are Subaru, its affiliates, employees, officers and directors; persons or entities that purchased the Class Vehicles for resale; and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change, or

expand the class definitions in light of discovery and/or further investigation.

60. **Numerosity**: The Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class is unknown at this time, as such information is in the sole possession of Subaru and is obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that hundreds of thousands of Class Vehicles have been sold and leased nationwide. Members of the Class can be readily identified and notified based upon, *inter alia*, the records (including databases, e-mails, and dealership records and files) maintained by Subaru in connection with its sales and leases of Class Vehicles.

61. **Predominance of Common Questions of Fact and Law**: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class Members.

These common legal and factual questions include, but are not limited to:

    a.    whether Subaru engaged in the conduct alleged herein;

    b.    whether Class Vehicles are defective;

    c.    whether Subaru placed Class Vehicles into the stream of commerce in the United States with knowledge of the Defect;

    d.    whether Subaru knew or should have known of the Defect, and if so, for how long;

    e.    when Subaru became aware of the Defect in the Class Vehicles;

    f.    whether Subaru knowingly failed to disclose the existence and cause of the Defect in the Class Vehicles;

    g.    whether Subaru's conduct alleged herein violates consumer protection laws, warranty laws, and other laws as asserted herein;

    h.    whether Plaintiff and Class Members overpaid for their Class Vehicles as a result of the Defect;

    i.    whether Plaintiff and Class Members have suffered an ascertainable loss as a result of their loss of their Class Vehicles' features and functionality;

    j.    whether Plaintiff and Class Members are entitled to damages,

including punitive damages, as a result of Subaru's conduct alleged herein, and if so, the amount or proper measure of those damages; and

k.      whether Plaintiff and Class Members are entitled to equitable relief, including but not limited to restitution and/or injunctive relief.

62.     **Typicality**: Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased or leased a Class Vehicle containing the Defect, as did each member of the Class. Plaintiff and Class Members were economically injured in the same manner by Subaru's uniform course of conduct alleged herein. Plaintiff and Class Members have the same or similar claims against Subaru relating to the conduct alleged herein, and the same conduct on the part of Subaru gives rise to all the claims for relief.

63.     **Adequacy**: Plaintiff is an adequate representatives of the Class, whose interests do not conflict with those of any other Class Member. Plaintiff has retained counsel competent and experienced in complex class action litigation— including consumer fraud and automobile defect class actions—who intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

64.     **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of these claims, including from the need for expert witness testimony on the technical and economic aspects of the case. Individualized litigation also would risk inconsistent or contradictory judgments and increase the delay and expense to all parties and the courts. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

65.    **Injunctive Relief**: Subaru has acted, and refuses to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY
**(On Behalf of the Nationwide Class and Oregon Subclass)**

66.    Plaintiff incorporates the above allegations by reference.

67.    Defendant expressly warranted that the Class Vehicles were of high quality and, at a minimum, would actually work properly. Defendant also expressly warranted that they would repair or replace defects in material and/or workmanship free of charge if they manifested during the warranty period. The length of Defendant's express warranty is 3 years/36,000 miles.

68.    The Defect is a defect in material and/or workmanship and therefore should have been repaired free of charge under the warranty.

69.    Defendant breached this warranty by selling to Plaintiff and Class Members the Class Vehicles with known defects, including but not limited to the Defect.

70.    Defendant further breached this warranty by failing to repair and/or replace Plaintiff's and other putative Class Members' electrical systems while the vehicles were still under warranty. In fact, Plaintiff presented his vehicle to an authorized Subaru dealer during the warranty period complaining of the Defect and despite such complaints, Defendant failed to repair or replace the defective electrical system under warranty, and instead simply replaced the battery which was merely how the Defect manifested itself, but not the actual defective part. As a result of the breach of warranty, Plaintiff was forced to incur additional expenses and has been left with a vehicle that is at risk of battery failure at any time.

71.    Subaru of America, Inc. knew of the Defect since at least 2017, if not

before, and continues to have knowledge of the Defect and breaches of its express warranty yet has intentionally failed to notify Plaintiff and Class Members.

72.     This intended failure to disclose the known Defect is malicious and was carried out with willful and wanton disregard for the rights and economic interests of Plaintiff and Class Members.

73.     As a result of Defendant's actions, Plaintiff and Class Members have suffered economic damages including but not limited to costly repairs, loss of use of the vehicles, substantial loss in value and resale value of the vehicles, and other damages.

74.     Defendant's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Defendant's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the Defect so that they could avoid repairing it under warranty.

75.     The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiff and Class Members. Among other things, Plaintiff and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Defendant and Class Members, and Defendant knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

76.     Plaintiff and Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

77.     Plaintiff and Class Members are entitled to legal and equitable relief Defendant, including damages, consequential damages, specific performance, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

## COUNT II
## BREACH OF IMPLIED WARRANTY
### (On Behalf of the Nationwide Class and Oregon Subclass)

78.    Plaintiff incorporates the above allegations by reference.

79.    Subaru is a "merchant" as defined under the UCC.

80.    The Class Vehicles are "goods" as defined under the UCC.

81.    A warranty that the Class Vehicles were in merchantable quality and condition arises by operation of law with respect to transactions for the purchase and lease of Class Vehicles. Subaru impliedly warranted that the Class Vehicles were of good and merchantable condition and quality, fit for their ordinary intended use, including with respect to safety, reliability, operability, and the absence of material defects, and that the vehicles would pass without objection in the automotive trade.

82.    The Class Vehicles, when sold and leased, and at all times, thereafter, were not in merchantable condition or fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles were not merchantable in that the Defect renders the vehicle completely inoperable, which may also leave drivers and passengers stranded, unexpectedly, in perilous locations. The Defect therefore renders the Class Vehicles unfit to provide safe and reliable transportation.

83.    Subaru was provided notice of the issues complained of herein within a reasonable time by numerous complaints online, directly to Subaru and its authorized dealers, class members taking their vehicle to its dealers, and the instant lawsuit.

84.    Plaintiff and the other Class Members have had sufficient direct dealings with either Subaru or its agents, including its authorized dealerships, to establish privity of contract between Subaru on the one hand, and Plaintiff and each Class Member on the other hand. Regardless, privity is not required here because Plaintiff and each of the Class Members are the intended third-party beneficiaries of

contracts between Subaru and its dealers, and specifically of Subaru's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles. The warranty agreements were designed for and intended to benefit consumer end-users only.

85.     In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Subaru to limit its express warranty in a manner that would exclude or limit coverage for the Defect would be unconscionable. Subaru's warranties were adhesive and did not permit negotiations. Subaru possessed superior and exclusive knowledge of the Defect, which is a latent defect, prior to offering Class Vehicles for sale. Subaru concealed and did not disclose this Defect, and Subaru did not remedy the Defect prior to sale (or afterward).

86.     As a direct and proximate result of the breach of these warranties, Plaintiff and Class Members were injured and are entitled to damages.

## <u>COUNT III</u>
## BREACH OF WRITTEN WARRANTY UNDER
## THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301 *ET SEQ.*
### (On Behalf of the Nationwide Class and Oregon Subclass)

87.     Plaintiff incorporates the above allegations by reference.

88.     Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301(3).

89.     Subaru is a "supplier" and "warrantor" within the meaning of the MMWA, 15 U.S.C. § 2301(4)-(5).

90.     The Class Vehicles are "consumer products" within the meaning of the MMWA, 15 U.S.C. § 2301(1).

91.     15 U.S.C. § 2310(d) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

92.     Subaru's express warranties are written warranties within the meaning of the MMWA, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranties are covered under the MMWA, 15 U.S.C. § 2301(7).

93.     Subaru breached its express and implied warranties as described in more detail above. Without limitation, the Class Vehicles contain the Defect that cause the vehicles to be inoperable, which renders the vehicles unfit for their intended use and unsafe.

94.     Plaintiff and the other Class Members have had sufficient direct dealings with either Subaru or its agents (*e.g.*, dealerships) to establish privity of contract between Subaru on the one hand and Plaintiff and each Class Member on the other hand. Regardless, privity is not required here because Plaintiff and each of the Class Members are intended third-party beneficiaries of contracts between Subaru and its dealers, and specifically of Subaru's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles. The warranty agreements were designed for and intended to benefit consumer end-users only.

95.     Plaintiff and Class Members have afforded Subaru a reasonable opportunity to cure its breach of written warranties, and any further opportunity would be unnecessary and futile here as Subaru has failed to remedy the Defect.

96.     At the time of sale or lease of each Class Vehicle, Subaru knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but it nonetheless failed to rectify the situation and/or disclose the Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure under the MMWA and/or afford Subaru a reasonable opportunity to cure

its breach of warranties is excused and thereby deemed satisfied.

97. Plaintiff and the Class Members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because Subaru is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the other Class Members have not re-accepted their Class Vehicles by retaining them.

98. The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

99. Plaintiff individually and on behalf of the other Class Members, seeks all damages permitted by law, including diminution in value of the Class Vehicles, in an amount to be proven at trial.

**COUNT IV**
**FRAUDULENT CONCEALMENT**
**(On Behalf of the Nationwide Class and Oregon Subclass)**

100. Plaintiff incorporates the above allegations by reference.

101. Subaru made material omissions concerning a presently existing or past fact in violation of common law. Subaru did not fully and truthfully disclose to its customers the true nature of the battery system defect. A reasonable consumer would not have expected the Defect in a new vehicle and especially not a Defect that rendered the vehicle inoperable, posing a serious safety risk.

102. Subaru made these omissions with knowledge of their falsity and with the intent that Plaintiff and Class Members rely upon them.

103. The facts concealed, suppressed, and not disclosed by Subaru to Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease Class

Vehicles or pay a lesser price.

104.    Subaru had a duty to disclose the true quality and reliability of the Class Vehicles because the knowledge of the Defect and its details were known and/or accessible only to Subaru; Subaru had superior knowledge and access to the relevant facts; and Subaru knew the facts were not known to, or reasonably discoverable by, Plaintiff and Class Members. Subaru also had a duty to disclose because it made many affirmative representations about the qualities and reliability of its vehicles, including references as to safety and general operability, as set forth above, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual reliability of their vehicles.

105.    Had Plaintiff and the Class known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less in doing so. Thus, Plaintiff and the other Class Members were fraudulently induced to lease or purchase Class Vehicles, containing the Defect.

106.    Plaintiff and Class Members reasonably relied on Subaru's material omissions and suffered damages as a result. Subaru's conduct was willful, wanton, oppressive, reprehensible, and malicious. Consequently, Plaintiff and Class Members are entitled to an award of punitive damages.

**COUNT V**
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class and Oregon Subclass)**

107.    Plaintiff incorporates the above allegations by reference.

108.    As the intended and expected result of its conscious wrongdoing, Subaru has profited and benefited from the purchase and lease of Class Vehicles that contain the Defect.

109.    Subaru has voluntarily accepted and retained these profits and benefits, knowing that, as a result of its misconduct alleged herein, Plaintiff and the Class

were not receiving Class Vehicles of the quality, nature, fitness, reliability, safety, or value that Subaru had represented and that a reasonable consumer would expect. Plaintiff and the Class Members expected that when they purchased or leased a Class Vehicle, it would not contain a Defect that makes the vehicle inoperable and unreliable and poses a serious safety risk.

110.    Subaru has been unjustly enriched by its deceptive, wrongful, and unscrupulous conduct and by its withholding of benefits and unearned monies from Plaintiff and the Class rightfully belonging to them.

111.    Equity and good conscience militate against permitting Subaru to retain these profits and benefits from its wrongful conduct. They should accordingly be disgorged or placed in a constructive trust so that Plaintiff and Class Members can obtain restitution.

<u>**COUNT VI**</u>
**VIOLATION OF OREGON'S UNLAWFUL ("UTPA")**
**TRADE PRACTICES ACT, ORS § 646.608, *ET SEQ.***
**(On Behalf of the Oregon Subclass)**

112.    Plaintiff incorporates the above allegations by reference.

113.    Plaintiff brings this claim on behalf of the Oregon Subclass.

114.    Plaintiff and Class members are "Persons" within the meaning of ORS 646.605(4).

115.    Defendant manufactured, designed, and marketed the defective Class Vehicles in Oregon at all times material, and is in the business of regularly selling and marketing its consumer goods at all times material and is a "person" as defined at ORS 646.605(4).

116.    In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the UTPA as detailed above. Specifically, in manufacturing, selling, and designing the defective Class Vehicles, and in marketing, offering for sale, and selling the defective Class Vehicles, Defendant

engaged in unfair or deceptive acts or practices prohibited by ORS § 646.608(1)(e), (i), (j), (k), (p), and (s) including, but not limited to:

    a. Knowingly selling Class Vehicles with defective electrical systems and/or batteries;

    b. Concealing the Defect from consumers; and

    c. Failing to disclose the Defect to consumers.

117. Defendant's failure to disclose and active concealment of the Defect were material to Plaintiff and Class members. Had they known the truth, Plaintiff and Class members would have been able to make an informed decision about purchasing and/or leasing another vehicle.

118. Plaintiff and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose, because Defendant had exclusive knowledge of the information surrounding the Defect and did not alert Plaintiff and Class members to said information prior to purchasing the Class Vehicles. Plaintiff and Class members did not, and could not, unravel Defendant's deception on their own.

119. Defendant had an ongoing duty to Plaintiff and Class members to refrain from unfair and deceptive practices under the UTPA in the course of their business. Specifically, Defendant owed Plaintiff and Class members a duty to disclose all the material facts concerning the Defect because Defendant possessed exclusive knowledge, intentionally concealed it from Plaintiff and Class members, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

120. Plaintiff suffered injury in fact, including lost money or property, as a result of Defendant's unfair acts. Absent Defendant's unfair conduct, Plaintiff would not have purchased the vehicle.

121. Plaintiff and Class members suffered ascertainable economic loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

122. Defendant's violations present a continuing risk to Plaintiff and Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

123. Plaintiff and Class members seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, attorney fees and costs, and any other just and proper relief available under ORS § 646.638.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, hereby requests that the Court enter an Order against Subaru providing for the following:

A. Certification of the proposed Class and/or Subclasses, appointment of Plaintiff and his counsel to represent the Class, and provision of notice to the Class;

B. An order permanently enjoining Subaru from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C. Injunctive relief in the form of a recall or free replacement program;

D. Equitable relief, including in the form of buyback of the Class Vehicles;

E. Costs, restitution, damages, including punitive damages, penalties, and disgorgement in an amount to be determined at trial;

F. An Order requiring Subaru to pay pre-and post-judgment interest on any amounts awarded, as provided by law;

G. An award of reasonable attorneys' fees and costs as permitted by law; and

H. Such other or further relief as may be appropriate.

*/ / /*

## PRAYER FOR RELIEF

Plaintiff hereby demands a trial by jury for all claims so triable.

Respectfully submitted,

Dated: April 16, 2020

/s/ Bradley K. King
Bradley K. King (NJ Bar # 081472013; CA Bar # 274399)
Tina Wolfson* (CA Bar # 174806)
Ruhandy Glezakos* (CA Bar # 307473)
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, CA 90024
Tel: (310) 474-9111
Fax: (310) 474-8585

Counsel for Plaintiff Dustin Dalen on behalf of himself and all others similarly situated

*\* Pro Hac Vice Application Forthcoming*